The next case, News America, Marketing, In-Store Services, LLC v. Floorgraphics, Inc. Mr. Beer? Good morning, Your Honors. May it please the Court. My name is Tom Beamer. I'm from Dilworth-Paxson, and I represent the Appellant and the Cross Appellee, Floorgraphics. I would like to reserve three minutes of my time for rebuttal. Okay. I'm sorry. I had your name misspelled on the sheet here. No worries, Your Honor. Huh? No worries, Your Honor. Yeah, I see it on the other B-I-M-E-R. Your Honor, we're here on an appeal and a cross appeal in which the District Court got three of the four issues correct. And based on this Court's initial guidance, I'm going to begin my argument with the cross appeal first, where the District Court got the answer completely correct. The cross appeal… On attorney's fees? On attorney's fees, Your Honor. Really, what the cross appeal deals with is the issue of whether News America is entitled to contractual indemnification for the alleged breach of a covenant not to sue. All right. Why did the District Court get it right? The District Court got it right, Your Honor, because it focused on three things. The circumstances leading to News America's decision to bring a declaratory judgment action, the law of contractual indemnity, and the actual language in the covenant not to sue that the parties selected. With respect to the circumstances, Your Honor, you have to understand that this story begins in 2009, when a previous litigation between these two parties was settled. That previous litigation involved a dispute over alleged anti-competitive conduct. After that lawsuit was settled, there have been two cases filed, two additional litigations filed. Both of those litigations were filed by News America, none by Florographics. Well, they were trying to enforce their covenant not to sue. The second time, Your Honor. The first time News America brought a lawsuit after the 2009 settlement, some months after the settlement, seeking to claw back approximately half of the $30 million settlement number for alleged fraud by my client, Florographics. Well, that suit was really to enforce the settlement agreement more than enforce the indemnification agreement. There were two things going on in that suit, Your Honor. You're right. They were trying to enforce certain reps and warranties in an asset purchase agreement. Yeah. And they were suing that they were defrauded. And the important part is the fraud count, because there was a basket that limit their contract claims to $1.7 million. So when they're suing for $15 million, they'd have to prove fraud to go above that. But what happens, Your Honor, is during the pendency of News' case against Florographics, while that case is ongoing, there's information that comes out in the media. There's an article in the New York Magazine by a respected journalist that says, essentially, that everything News was saying in that case was untrue. Okay. So you try to assert counterclaims. Not first, Your Honor. The first thing I do is as a result of that article coming out, we recognize that we have a problem, that it could be a compulsory counterclaim under the law, because they're suing under an agreement that may have been fraudulently induced. So what I do is I go to the lower court and I go to counsel and I say, we have a problem. The problem is this article's come out. I don't know if it's true. They're saying they spoke to a lot of ex-employees and that they have this information. But I don't want to be whipsawed. I don't want to be in a position later on where News takes a position that I should have asserted that as a compulsory counterclaim. We ask for a stipulation. News refuses. As a result of that, we're forced to make a decision. When they refuse, our thinking is they're going to use this as an argument later on that we had to bring it as a compulsory counterclaim. So we move and ask for permission to assert the claim with the lower court. But on the record, in A107, I said explicitly that the only reason we're bringing this motion is not to assert the claims, but to preserve the claims. And the lower court recognizes that in its opinion where it denies the motion but says it's going to serve as a preservation order in order to say that News can't later on say we should have brought a compulsory counterclaim. Okay, and the next thing that happens is this declaratory judgment action. That's right. News then brings a declaratory judgment action, which was their right to do. News wanted to clear up whether or not, even if we could prove these claims. All right, I'm trying to get you back to your point. You got off point. You were talking about the attorney's fees, and you spent almost half your time not talking about procedural history. Your Honor, the reason that the circumstances are so important is because the attorney's fees go to whether or not we breached the covenant not to sue, whether we asserted a claim. We never asserted a claim. We tried to preserve a claim, even in the motion to amend. Well, that's sort of technical. The fact that you try to file a claim shows that you thought you had a right to file a claim, even though the court or the magistrate judge didn't allow you to do it. But it showed that you thought you had the right to do it and that you would do it subsequently. Your Honor, you're right. We did seek permission to file a claim. So their concern that you were not going to abide by the covenant not to sue in the asset purchase agreement was, you know, I can't say it's unreasonable. I don't think it was unreasonable either, Your Honor. Let's take a step back on this question. You also assert that we don't have jurisdiction. That's correct, Your Honor. You don't have jurisdiction. Why do we not have jurisdiction? Well, for the classic reason that this was a denial of a motion for summary judgment. What else was left to do? Your Honor, what New said. On this claim. On this claim. What New said on this claim is that as a matter of law, their declaratory judgment action is covered by the terms of the covenant not to sue. The district court denied that. Now, in reality, that declaratory judgment action did not have any claim for attorney's fees or indemnification, did it? The declaratory judgment action that New filed? Yes. It was in the addendum clause. It's New's position now. No, isn't it the relief that they were asking for? That's correct, Your Honor. They were asking for the relief. It was in the relief that they requested. So they didn't have a claim. They were asking for the relief. And the court, the district court, after it granted summary judgment on the release part of the declaratory judgment action, then labeled that relief as a motion for summary judgment on a claim. Didn't the district court, in effect, mislabel that? I believe it did, Your Honor. Okay. Now, if, in fact, you agree that they mislabeled that, doesn't that mean there was nothing else left to be done? I agree with you. Okay. And doesn't that give us jurisdiction? If that is, in fact, what the district court did, I would agree with you. But I think it is unclear. I don't think it's clear that the district court meant to do that. So you think that if, in fact, they did what you and I agreed could make it final, it would be final. But you're saying what? That it's unclear. You're right, Your Honor. That's what I'm saying. What else was there to be done in the district court? There was nothing else to be done. Your Honor, News has taken the position that they have brought a claim for attorney's fees in the addendum clause. And, therefore, if the district court just denied their motion as a matter of law, there could be fact issues. Yeah, but there was nothing left to be done. In the district court, there was no further proceedings that could go forward. Your Honor, I don't agree with that necessarily. I believe that's potentially what happened. But what could go forward? Let me explain, Your Honor. If I bring a motion for summary judgment saying I'm entitled to summary judgment as a matter of law on a contract claim, on a contract claim, which this might have been. I agree it might not have been. But if I bring that claim and I lose, and the court just denies the motion, but doesn't grant summary judgment to floor graphics, just denies the motion, then there's the potential that the court's saying, well, it could be a matter of intent. I can't interpret it on the law. So there could be issues that are left unresolved. That's if there are fact issues which have to be resolved by a district court. But in this case, there was nothing left to resolve. Your Honor, I believe that's one interpretation and a reasonable interpretation of the order. We raise the jurisdictional question because of the normal context. If you file a motion for summary judgment on the law and the court simply denies it, the Third Circuit has said over and over and over again that that's not appealable. The question here is what did the district court mean to do? Let's stop there a second. Where does that leave you on the relief requested of attorney's fees in the district court? What happens there? It leaves me one of two places, Your Honor. Either the district court did mean for it to be a final order and concluded that news is lost on their motion for summary judgment. Actually, floor graphics got summary judgment on that issue. Then it's properly ripe for appeal, and we have to argue it. If it really meant the district court that all I'm doing is denying their motion for summary judgment, then it would have to go back to the district court. I think those are the two possible scenarios, Your Honor. On the question, let's leave aside the jurisdictional question for a moment. On the question of assertion as to who asserted what and whether or not your defense, in effect, that you don't owe attorney's fees, was an assertion that was covered under the release, isn't that a genuine issue of material fact? Isn't there a genuine issue of material fact as to what was meant by assertion in that release? I don't think under these circumstances, Your Honor. This is a claim for indemnity under New York law. The Hooper case says that— You think it's clear. It not has to be clear. It has to be unmistakably clear that they are entitled to indemnity. So you think it's unmistakably clear that they are not entitled to it? Yes, Your Honor, and the reason is they're relying on the words, assert a claim. Assert means to enforce one's rights. At worst, at worst, what floor graphics did was ask for permission to assert a claim. That's what a motion to amend the pleadings is, and that's why the context is relevant. Well, we have to look at this practically and not technically. I like to drag that out, but in effect you were going to assert a claim, and therefore they had apprehension that you were acting contrary to your asset purchase agreement settlement where you would not assert any more claims after the thing was settled. Your Honor, I disagree. I think you have to look at it technically. I think they're talking about an indemnification, a contractual indemnification. Under New York law, you have to find an unmistakably clear intent to say asserting the claim means the same thing as seeking permission to assert the claim. Well, we've all read an awful lot of covenants not to sue and settlements, and I've got to tell you something. I read this case, and I want to say this is one of the best covenants not to sue that I've ever read. It covered the waterfront, I've got to tell you. Your Honor, it didn't cover one thing. It didn't cover specifically, expressly a fraud in the inducement claim. It did not say it, and we have a New Jersey Supreme Court case right on point called Bilotti. In some respects, this is an unusual case, and here's why. You have a very narrow issue on the release, and that is, is a fraud in the inducement claim released when the release is in the very document that is alleged to be fraudulently induced? That is a very, very specific question. So how in this case, what is the fraud in the inducement of the release and covenant not to sue that you signed in this case? How were you induced fraudulently to sign that release? It's just like the Bilotti case, Your Honor. I know the Bilotti case, but tell me the facts of this case which bring it within Bilotti. Okay. In this case, there was a lawsuit, just like in Bilotti. There was a first lawsuit. As a result of the lawsuit, the lawsuit was settled. There were things said. It had to do with the value of the company in Bilotti. In this case, it had to do with the value of the claim. There was a second lawsuit, just like in Bilotti. There was a second lawsuit. In Bilotti, there was a separate release under seal. Just like here, there was a separate release, but not under seal. The release had very broad language. The Supreme Court in New Jersey said the release had very broad language. It covered future claims, just like here. But the court said in New Jersey, the Supreme Court, that in order to say that a fraud in the inducement claim is released by the document that was allegedly fraudulently induced, there are only two ways you can do it. One is it has to be expressly embraced. You have to mention you're releasing fraudulent inducement claims or claims arising by operation of executing this agreement. This agreement doesn't do it. The second way is to show that the general terms mean they intended to do it. And what the Bilotti case said is that that can't be done on summary judgment. That case was brought on summary judgment before there was any discovery on the issue. So the district court here, remember when I said they got three or four things right? This is the one they got wrong. The specific holding in Bilotti, dealing with the specific issue of a fraudulent inducement claim. My question is, how are you fraudulently induced to sign this release when during this lawsuit you knew or you suspected that there was hacking and later on, after you settled it, you found out that your suspicion was verified, that maybe you shouldn't have settled it because you had a terrific case. As a matter of fact, NAM then was settling with everyone else because they acknowledged that maybe their case wasn't so strong. But you were aware of what was going on during the pendency of the case. Later on, after you settled it, news arose that showed maybe you shouldn't have settled it so fast. You had a better case than you thought you had. But that's not fraud in the inducement to sign a release. Not by itself, Your Honor. But the Bilotti case, if Your Honor recalls, the issue was the value of the company's stock. That was an issue in the underlying litigation. And here, the issue was the value of the underlying claims. And let me explain specifically what the fraud is alleged to be. And remember, we haven't brought this claim. We're relying on what's in a newspaper article or a magazine article. But what was said is that what news was saying in the case, news admitted that there was somebody who broke into our computers. News said they did an investigation, and they didn't know who did it. It wasn't approved by the higher-ups, and there was nothing of value taken. The article said that not only did they know who did it, but it was approved by the head of the company. And that they were taking high-value information and cheering when they would bring out our confidential information. So just like any contract case, we're relying on certain things. And we would have to prove this, Your Honor, if we brought the claim. Does that show that you were induced to sign the release? What you've said is, in effect, that after you've signed a release, news articles surface and other information comes to your attention that they weren't the best citizens of the business, that maybe there was a little bit more hacky-packy that they were denying originally. Correct. But they don't admit that the news article was correct either. No, Your Honor, which is why I think we have to focus on the issue here, which is whether that potential claim, which we haven't brought, which if we did bring we would have to prove, is released by the language in the document that's alleged to be fraudulently induced. That's the question. That's the specific question, not whether we can prove it at the end of the day. That's the question. And we haven't brought the claim. Okay. Mr. Beamer, we're going to have you back on rebuttal. Mr. Abrams. Please, the Court. I'm Lee Abrams representing News America Marketing. Because Mr. Beamer started talking about attorney's fees, I'll start with attorney's fees also. He refers to a covenant not to sue. But the language, if you look at paragraph 5 of the mutual release, says the parties shall be forever barred and enjoined from asserting, instituting, commencing any proceeding, prosecuting, and so on. But asserting doesn't mean a lawsuit. Asserting, according to Black's Law Dictionary, means declaring or maintaining as true. And when they write a letter to the magistrate judge saying we've got a claim of fraud, it's based on a magazine article that cites unidentified sources, unnamed sources, but there's this magazine article, and then they file a pleading, which is a motion for leave to amend by adding counterclaims for fraud, I think they have unquestionably asserted that claim. And in that respect, we think that the trial judge got it wrong when he said, in essence, that because you're the plaintiff in a declaratory judgment action, yes, you would have been a defendant, a counterclaim defendant, if the motion for leave to amend was granted. But here you're the plaintiff, therefore you don't get indemnified under the asset purchase agreement. On the question that was before the district court at that time, wasn't there at least a genuine issue of material fact as to whether there had been an assertion? Because there was nothing in the – you brought the declaratory judgment action. Yes, Your Honor. You didn't make a claim. Would you agree you did not make a specific claim for attorney's fees? We didn't articulate it other than in the ad damnum provision, which seeks relief. You asked for relief. The form of relief you asked for was attorney's fees. It was attorney's fees. Okay. Okay. So you – now. And I would say, Your Honor, that if that is the only issue, we can go back and file a separate action for indemnification because the statute – My question is whether or not the court, based on that record, could have made a determination whether or not there was an assertion made that was in violation of paragraph 5. I think the court not only could have, but he actually did. In December 2000 – And the court said it didn't. The court said they didn't. But earlier he said they did. In December 2012, there was a motion filed by news to – I'm sorry, by floor graphics to dismiss the declaratory judgment action. And at page 353 of the appendix, the judge said there that the question of assertion – the probability of FGI's assertion of the fraud claim is not contingent on anything. It already occurred. That's Judge Martini's words in December 2012, December 12, 2012, appendix page 353. So there is the assertion that triggers the indemnification obligation under the mutual release and the asset purchase agreement. Let's go back a step. Mr. Beamer says that we don't have jurisdiction over the attorney's fees question. Do we? I disagree respectfully as judge. How do we get it? I think the Acton case in the Eighth Circuit, which we discuss at length in our brief – In the Eighth Circuit? In the Eighth Circuit. But it's not controlling on this court, of course. But it is a clear articulation of a situation in which there the firefighters sued the city of Columbia, Missouri and asserted claims for meal allowances and overtime pay and so on. And the court found in favor of the firefighters on certain issues and denied their motion for summary judgment on the meal allowance issue. And the court of appeals said what we're asking this court to say, and I think Judge Cowen hinted at it. There was nothing left for the district court to do. If the city had filed a cross motion for summary judgment, that motion would have been granted. If FlorGraphics had filed a cross motion for summary judgment, saying that News America Marketing has no right to attorney's fees here, Judge Martini would have granted it. That's a lot of supposition, isn't it? How do we know that in this case? Because there was nothing else left for him to do. On the attorney's fee question, he decided it. The question – Well, it seems to me part of my problem with what Judge Martini did was he said that you have – he said it's moved to the motion for summary judgment filed by NAM on their claim for attorney's fees. I can't find any claim for attorney's fees. Well, that claim is set forth in the ad damnum provision. That's where it's requested. We ask for attorney's fees. Yes, in a form of relief. In the form of relief. And essentially should not have the court said we're denying that relief? The court said we are denying your claim for attorney's fees. We're denying your request for summary judgment. He didn't say it's because you didn't plead it properly. He merely said you didn't, under the circumstances of this case, I am denying the request for attorney's fees. I'm ruling in your favor on the issue of liability. The release covers this claim of fraud relating to Gary Henderson's testimony and relating – and I have to confess, I was the lawyer who made the opening statement that Mr. Beamer now says was misleading. The statement that News America Marketing did not know after an extensive investigation who accessed the computer website. And they didn't hack. They used a password. Whoever did it used a password that floor graphics had disseminated to thousands of people. And Judge Thompson saw pictures of what was on that website. It was hardly the crown jewels. It were instructions about where to put floor ads on the floor. Or put the soup ads in front of the soup cans and so on. But the case settled. I'm going to, if I may for a moment, turn to the merits question. Fraud in the inducement, an essential element of that is reliance, reasonable reliance. There was no reliance by floor graphics when they signed that release that Mr. Henderson was telling the truth when he said he didn't access the website. They tried for six hours to shake his testimony to that effect. They didn't succeed in shaking his testimony. They decided to settle the case. But they were certainly not induced to settle by a belief that Mr. Henderson was telling the truth and later on they found out he was lying. They always thought he was lying. And the release was very broadly written, releasing claims relating to any statement made by any representative of News America Marketing. Any and all statements. And there's express language in the release that says floor graphics did not rely on any statement other than the statements referenced in this document. And they waived unknown claims citing specifically in paragraphs seven and eight the California statute that deals with waivers. They do argue this Bilotti case in New Jersey. And I think Bilotti is very different on its facts, Your Honor. In Bilotti there was clearly fraud in the inducement when Mr. Bilotti was negotiating with his brother-in-law who had duped him out of his interest in the corporation. The brother-in-law lied to him. That's a very different factual situation. If the court has no further questions, I think we've covered it all in the briefs beyond what I've addressed this morning. Well, thank you, Mr. Abrams. Mr. Beamer, you already had a few moments in your rebuttal. Do you have anything else to add? I'll be real quick, Your Honor. I think that you have to separate what's before the court and what's not before the court. What's before the court is a very specific issue as to whether a fraud in the inducement claim was released by the document that contains the release which was alleged to be fraudulently induced. That's the specific issue. Not whether we can prove said claim at the end of the day. The court didn't get into whether we could prove that we were fraudulently induced. The court said that even if you can prove it, it's been released. And with respect to roadmaps, there's been a lot of talk of roadmaps by the court in the previous case. This case has a roadmap. It's right on point. It's a New Jersey Supreme Court case. It's controlled. But Mr. Abrams says the facts are different. But Mr. Abrams says the facts are different because they were, in fact, fraudulently induced. We haven't even gotten there. There's been no discovery. That's not whether the claim is released, Your Honor. You cross-examined Mr. Henderson for six hours. I didn't personally, but he was cross-examined. That's correct. You certainly didn't change your opinion of whether or not Henderson perhaps had something to do with gaining this information. That's correct, Your Honor. That you settled the case. That's right, Your Honor. So you knew the Henderson claim was out there. No, Your Honor. Just like when you get You can't say that counsel for your clients at that point didn't know there was at least some question of whether Henderson was involved in illegally gaining this information. Your Honor, if that were the standard Isn't that in contemplation? It wasn't that It's potentially in contemplation in every contract case. But if that were the standard, Bilotti would have come out the other way. They would have said, Buyer, beware. Every buyer knows that the seller may misrepresent the facts. But that's not the way it came out. If we rule in your favor in this case, what does that do to general releases, which we all know 99% of all lawsuits are settled with general releases between counsel. What does that do to the general release, which is given between pretty heavily fought cases, where you can then open up the case, say, The depositions that I took, I found out now that the opponent was lying. Your Honor, Bilotti gives a roadmap to all sophisticated counsels exactly what they need to do. No, Bilotti did not involve that factual situation. Bilotti is a different fact from this case. Your Honor, it was a settlement of a previous lawsuit with a second lawsuit brought, saying they misrepresented the facts. In order to get them to sign, they misrepresented the facts to get them to sign the release. They didn't do it in this case. They didn't misrepresent anything to you to get the release. You knew, suspected, that Henderson was hacking or whatever he was doing, that you had a case, but you didn't have much evidence to prove the case. Your Honor, they're two separate things. One is if you suspect the witness is lying about something, and the other is if they had come in and said, it's true. Let's say the article's true. Henderson hacked. It was approved by their higher-ups. The information was highly material. That's a very different case than when they come in and say, no, no, no, no, no, it didn't happen. And to answer your specific question, Your Honor, about what happens with releases, all the parties have to do is expressly embrace a fraudulent inducement claim in the release. The court will not allow you to say this release is good, even if the release or a releasee is fraudulently induced to sign the release. Absolutely, Your Honor. That's what Bilotti said. That's what he says. Your Honor, that is what Bilotti says. Okay. I think your position is clear. Thank you. Thank you very much, Mr. Beamer. And we thank both counsel for a case that was well-argued. We'll take the matter under advice.